# United States Court of Appeals
## For the First Circuit

No. 15-1522

UNITED STATES OF AMERICA,

Appellee,

v.

JOEL WETMORE,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice, and
Selya, Circuit Judge.

James B. Craven III for appellant.
Jennifer A. Serafyn, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

February 5, 2016

_____

     * Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  The Adam Walsh Child Protection and Safety Act (the Act) allows the federal government to seek civil commitment of any "sexually dangerous person" already in the custody of the Bureau of Prisons (BOP).  <u>See</u> 18 U.S.C. § 4248(a).  Pursuant to the Act, an individual is deemed to be sexually dangerous (and thus unfit to be safely returned to the community) if the government can prove by clear and convincing evidence that the individual "has engaged or attempted to engage in sexually violent conduct or child molestation"; "suffers from a serious mental illness, abnormality, or disorder"; and as a result of such disorder "would have serious difficulty in refraining from sexually violent conduct or child molestation if released."  <u>Id.</u> § 4247(a)(5)-(6); <u>see</u> <u>id.</u> § 4248(d).  Once such a person is civilly committed, he can be released only upon a showing that he is no longer sexually dangerous.  <u>See</u> <u>id.</u> § 4248(e).

This appeal presents a question of first impression at the federal appellate level regarding the operation of the Act's "release" provision: when a person who has previously been deemed sexually dangerous petitions for release from civil commitment, which party — the committed person or the government — bears the burden of proof?  We hold that the burden is on the committed person to make the requisite showing.  With the proper allocation of the burden of proof in place, we turn to the case at hand and

- 2 -

affirm the district court's denial of the release petition at issue here.

The anatomy of the case is uncomplicated. Appellant Joel Wetmore is civilly committed to the BOP as a sexually dangerous person pursuant to 18 U.S.C. §§ 4247-48. We assume the reader's familiarity with earlier opinions involving Wetmore's civil commitment and chronicling his personal, offense, and treatment history. See United States v. Wetmore (Wetmore II), 700 F.3d 570, 572-73 (1st Cir. 2012); United States v. Wetmore (Wetmore I), 766 F. Supp. 2d 319, 321-25 (D. Mass. 2011). For now, it suffices to say that Wetmore has a history of pedophilia. After a series of convictions for sexual misconduct involving minors, he pleaded guilty in 2000 to possession and receipt of child pornography. See 18 U.S.C. § 2252A. The district court sentenced him to an 87-month term of immurement.

On November 17, 2006 — one day before Wetmore was scheduled to complete his prison term — the BOP certified him as sexually dangerous and commenced an effort to have him civilly committed under the Act. See id. § 4248(a). Wetmore's confinement continued, see id., and on March 2, 2011 — following a seven-day bench trial on the government's application for civil commitment — the district court determined that Wetmore was sexually dangerous and ordered him civilly committed. See Wetmore I, 766 F. Supp. 2d at 338. Wetmore's confinement continued during and after the

pendency of his unsuccessful appeal. See Wetmore II, 700 F.3d at 580.

Wetmore was held at the Butner (North Carolina) Federal Correctional Institution (FCI-Butner). While there, Wetmore participated in a treatment program and, in due course, he sought a psychiatric evaluation as a precursor to his possible release from civil commitment. Dr. Joseph Plaud, a forensic psychologist, was engaged on Wetmore's behalf to determine whether Wetmore remained sexually dangerous. Dr. Plaud's initial assessment was unfavorable to Wetmore. But when Dr. Plaud reevaluated Wetmore in April of 2014 (less than a year after his initial evaluation), he concluded that Wetmore was no longer sexually dangerous.

On November 27, 2013, Wetmore moved for a hearing to determine whether he satisfied the criteria for release under the Act. See 18 U.S.C. § 4247(h). Implicit in this motion was Wetmore's assertion that he was no longer sexually dangerous and would be able to reenter the community safely. At the ensuing hearing, Dr. Plaud testified that, in his view, Wetmore was no longer sexually dangerous and could safely be released. Wetmore, his brother, and a long-time family friend also testified. In opposition, the government introduced the testimony of both Dr. Andres Hernandez (the clinical coordinator of the treatment program at FCI-Butner) and Dr. Dawn Graney (a forensic psychologist charged with conducting annual reviews of sexually dangerous

- 4 -

persons detained at FCI-Butner). Each of the government's witnesses maintained that Wetmore remained sexually dangerous and, thus, could not safely be released into the community.

After considering all the evidence and evaluating the conflicting expert testimony, the district court concluded that Wetmore remained sexually dangerous and, thus, subject to continued civil commitment. See United States v. Wetmore (Wetmore III), No. 07-12058, slip op. at 2 (D. Mass. Feb. 27, 2015). The court noted the open question regarding which party bears the burden of proof at a hearing on a release petition under 18 U.S.C. § 4247(h), but found it unnecessary to resolve this question. See Wetmore III, slip op. at 8-9, 13 & n.3. Instead, the court ruled that — regardless of which party bore the burden of proof — Wetmore could not safely be released into the community. See id. at 2, 9. This timely appeal followed.

The threshold issue in this appeal is whether the government or the committed person bears the burden of proof at a release hearing held pursuant to 18 U.S.C. § 4247(h). The Act itself is silent on this question. It states, without elaboration, that the committing court may release the committed person only "[i]f, after the [discharge] hearing, the court finds by a preponderance of the evidence that the person's condition is such that . . . he will not be sexually dangerous to others if released . . . ." 18 U.S.C. § 4248(e).

There are no reported federal cases that explicitly decide which party bears the burden of proof at a section 4247(h) hearing. What case law exists provides guidance only by analogy. Most notably, a few courts have examined the allocation of the burden of proof in the context of 18 U.S.C. § 4246 (a statutory provision that addresses the release from civil commitment of individuals deemed to be dangerous because of mental illness). See, e.g., United States v. Anderson, No. 97-6372, 1998 WL 372382, at *2 (4th Cir. June 8, 1998) (per curiam); United States v. McAllister, 963 F. Supp. 829, 833 (D. Minn. 1997).

Anderson is typical of this line of cases. There, the Fourth Circuit concluded that a committed person bears the burden of showing by a preponderance of the evidence that "his release 'no longer create[s] a substantial risk of bodily injury.'" Anderson, 1998 WL 372382, at *2 (alteration in original) (quoting 18 U.S.C. § 4246(e)). We find this analogy persuasive and hold that, when a person who has been civilly committed as sexually dangerous petitions for relief from his civil commitment under 18 U.S.C. § 4247(h), he bears the burden of showing by a preponderance of the evidence that he is no longer sexually dangerous within the meaning of 18 U.S.C. § 4247(a)(5)-(6).

This holding comports with the general precept that a party who seeks the affirmative of an issue bears the burden of proving his petition. See Mashpee Tribe v. New Seabury Corp., 592

F.2d 575, 589 (1st Cir. 1979). After all, we have construed the Act to place the burden on the government to demonstrate in the first instance that a person is sexually dangerous, even though the Act itself does not specify this allocation of the burden of proof. See United States v. Shields, 649 F.3d 78, 81-82 (1st Cir. 2011); United States v. Volungus, 595 F.3d 1, 3 (1st Cir. 2010); see also 18 U.S.C. § 4248(d) ("If . . . the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person . . . ."). Thus, when a committed person affirmatively initiates release proceedings, "[i]t is not to be expected that the government would have the burden of proving the negative," that is, that the committed person is no longer sexually dangerous. McAllister, 963 F. Supp. at 833.

With the allocation of the burden of proof in place, we turn to the district court's rescript. We review that court's legal conclusions de novo and its findings of fact for clear error. See United States v. Volungus, 730 F.3d 40, 46 (1st Cir. 2013).

The court below found that Wetmore remained sexually dangerous because he "would have serious difficulty refraining from future acts of child molestation if released." Wetmore III, slip op. at 20. Wetmore's appeal, leaning heavily on Dr. Plaud's opinion, challenges this finding. This challenge lacks force.

The district court, in a thorough and well-reasoned exposition, grappled with the opposing views of the experts who

testified at the release hearing.  The court carefully explained why it thought that Wetmore remained sexually dangerous and could not safely be released into the community.  See Wetmore III, slip op. at 13-20.

We have remarked before that "when lower courts have supportably found the facts, applied the appropriate legal standards, articulated their reasoning clearly, and reached a correct result, a reviewing court ought not to write at length merely to hear its own words resonate."  DeBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 71 (1st Cir. 2014) (citing cases).  That precept squarely applies in this instance.  We therefore uphold the denial of Wetmore's release petition substantially on the basis of the district court's supportable factfinding and its persuasive reasoning.  We pause to make only a few additional observations.

**First:** at its core, this case involves dueling experts. Dr. Plaud explained his reasons for deeming Wetmore fit for release.  Dr. Graney (whose testimony was corroborated in material part by Dr. Hernandez) explained her reasons for doubting Wetmore's ability to control his harmful and inappropriate sexual urges. Over the course of three days, the district court observed these testifying experts and heard their competing opinions first-hand. The court also had the opportunity to assess the persuasiveness

vel non of the experts' views in light of the documentary evidence and the testimony of lay witnesses (including Wetmore himself).

Given that the evidence regarding Wetmore's sexual dangerousness was mixed, we are constrained to "defer in large measure to the trial court's superior coign of vantage." United States v. Espinoza, 490 F.3d 41, 44 (1st Cir. 2007). After all, where — as here — a body of evidence supports plausible but conflicting inferences, the trier's choice between those inferences cannot be clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); Espinoza, 490 F.3d at 46.

**Second:** in all events, the record offers strong support for the challenged finding. For one thing, the district court noted that Dr. Plaud had never acted as a treatment provider for Wetmore and had not worked with him formally on developing his release and relapse prevention plan. See Wetmore III, slip op. at 12. For another thing, the court found scant corroboration for Dr. Plaud's hopeful assertion that Wetmore possessed the necessary behavioral skills to reenter the community safely. See id. at 20. Citing the testimony of Dr. Graney and Dr. Hernandez, the court worried (with good reason, we think) that Wetmore had not sufficiently demonstrated that he could curb his dangerous sexual impulses. See id. at 13-17. Since "the district court's account of the evidence is plausible in light of the record viewed in its entirety," we must decline Wetmore's invitation to reweigh the

- 9 -

testimony and second-guess the district court's appraisal of the facts. Anderson, 470 U.S. at 573-74; see Volungus, 730 F.3d at 48; Shields, 649 F.3d at 89.

We need go no further. The burden of proof rested with Wetmore to show by a preponderance of the evidence that he had achieved the capacity to reenter the community safely. In this fact-intensive case and on this chiaroscuro record, the district court's assessment — though not inevitable — was plausible. Hence, there is no principled way for us to reject the district court's on-the-spot judgment and hold that Wetmore succeeded in carrying his burden of proof.

**Affirmed.**