# United States Court of Appeals
## For the First Circuit

No. 19-2065

UNITED STATES OF AMERICA,

Appellee,

v.

ALEXANDER GREAUX-GOMEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch and Kayatta, Circuit Judges,
and Laplante,* District Judge.

Victor A. Ramos-Rodriguez, Johnny Rivera-Gonzalez, and Wilfredo Diaz-Narvaez, on brief, for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauza-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief, for appellee.

---

* Of the District of New Hampshire, sitting by designation.

October 27, 2022

**LAPLANTE, District Judge**. Following lengthy pre-trial litigation, including motions to suppress and dismiss, a jury convicted Alexander Greaux-Gomez of enticement of a 15-year-old minor for unlawful sexual activity in violation of 18 U.S.C. § 2422(b) and transportation of a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). Additional post-verdict litigation ensued, which the district court resolved in the government's favor. Greaux appeals, asserting numerous challenges to the criminal judgment, mostly related to the district court's evidentiary rulings and the sufficiency of the evidence supporting his conviction. Finding no merit to Greaux's challenges, we affirm. In doing so, we hold that a defendant could be found to persuade, entice, or induce a victim in violation of Section 2422 notwithstanding purported evidence that the victim agreed to engage in sexual activity.

## I. Background

"We typically recite those facts relevant to sufficiency claims and challenges to a denial of a motion to suppress in the light most favorable to the verdict or to the district court's ruling." United States v. Burgos-Montes, 786 F.3d 92, 99 (1st Cir. 2015). "For other issues, such as claims of prejudicial error, we offer a balanced treatment, in which we objectively view the evidence of record." Id. (quotations and citation omitted). Because "we cannot simultaneously recite the facts in both manners,

we limit our initial summary . . . to those details essential to framing the issues on appeal," id., and "describe other facts, where necessary, in the appropriate discussions of [Greaux's] challenges." United States v. Brown, 945 F.3d 597, 599 n.1 (1st Cir. 2019).

In 2016, Greaux was a 39-year-old teacher and athletic coach at the Albergue Olímpico ("Albergue"), a school in Salinas, Puerto Rico that specializes in sports education. Greaux met the victim, JFR,[1] while she was a student at the Albergue.[2] When JFR was 15 and in tenth grade, Greaux was her track-and-field coach and teacher. Their relationship became more personal, and later, sexual, and Greaux abused his position of authority to entice JFR for unlawful sexual activity. Greaux eventually had oral and vaginal sex with JFR, who at 15 was too young to legally consent, at the school, in his vehicle, and in a vacant home in Cayey, Puerto Rico that Greaux had used as a homeschool. To get to the vacant homeschool in Cayey, JFR would arrange for her mother to drop her off at a supermarket in Cayey, and then Greaux would pick her up and take her to the home. The victim's mother did not know

---

[1] Although she was 18 at the time of trial, we refer to the victim by her initials, JFR.

[2] Students reside on the Albergue campus during the week, but they can return home on the weekends. JFR lived in Cidra, Puerto Rico during her sophomore year at Albergue.

- 4 -

Greaux was picking JFR up from the supermarket and instead believed that she was 'going to train.'

JFR also communicated with Greaux via cellular phone using the messaging application WhatsApp. Using WhatsApp, the two exchanged sexual messages, and Greaux asked JFR to send him photographs of a sexual nature, which she did on several occasions. Greaux also used code words in his messages to describe his sexual desires or to arrange for a location to meet JFR to have sex.

The victim's mother discovered that JFR was exchanging sexual messages and images with Greaux and confiscated her phone. The victim's mother then brought the phone to the U.S. Department of Homeland Security Investigations office ("HSI") in December 2016. HSI agents determined that the number JFR was messaging with belonged to Greaux and obtained a warrant to search and seize his phone.

While executing the search warrant in January 2017, agents encountered Greaux outside of his residence. After confirming his identity, agents showed Greaux the warrant, explained why they were there, and asked if he would agree to answer some questions, to which Greaux replied "yes." Agents then instructed Greaux to get inside their vehicle. Once inside the vehicle, agents had Greaux review the warrant and explained that he was not under arrest. They also verbally provided Greaux his Miranda warnings and presented him with a written Miranda

acknowledgment and waiver form, which Greaux signed. See Miranda v. Arizona, 384 U.S. 436 (1966) (holding that statements made during custodial interrogation are not admissible into evidence unless certain warnings are given).

Agents then began questioning Greaux. During questioning, Greaux made several incriminating admissions. Agents also seized Greaux's cell phone during the search. Forensic evaluations of both JFR's and Greaux's phones revealed some of their WhatsApp messages and various photographs of a sexual nature, including a photograph of JFR in her bra and underwear and photographs of JFR's vagina.

A grand jury charged Greaux with production of child pornography, 18 U.S.C. § 2251, enticement of a minor for unlawful sexual activity, 18 U.S.C. § 2422(b), and transportation of a minor to engage in criminal sexual activity, 18 U.S.C. § 2423(a). After a two-day trial, the jury acquitted Greaux on the production of child pornography charge, but convicted him on the enticement and transportation charges. The district court sentenced Greaux to 240 months' imprisonment, followed by fifteen years of supervised release.

## II. Analysis

Greaux appeals the district court's suppression ruling, argues that there was insufficient evidence for the jury to convict him on the enticement and transportation charges, and contends

that the district court committed the following errors, the cumulative effect of which entitle him to a new trial: (1) its decision to exclude evidence of a prior criminal proceeding involving JFR and a different adult male; (2) its decision to exclude other allegedly exculpatory evidence; (3) its allowance of leading questions during JFR's direct examination; (4) its acceptance of a material, prejudicial variance between the facts alleged in the indictment and those proven at trial; and (5) its admission of one of the prosecution's exhibits. We consider and reject each challenge in turn, beginning with the suppression issue.

**1. Suppression**

Greaux moved to suppress the inculpatory statements he made to law enforcement officers during their execution of the warrant for his phone, arguing that they were the product of an invalid Miranda waiver and coercive custodial interrogation. After an evidentiary hearing at which two officers and Greaux testified, the district court denied the motion.

"When reviewing a district court's decision on a motion to suppress, we consider its 'conclusions of law de novo and its factual findings, including its credibility determinations, for clear error.'" United States v. Melo, 954 F.3d 334, 339 (1st Cir. 2020) (quoting United States v. De La Cruz, 835 F.3d 1, 5 (1st Cir. 2016)). "In the Miranda context especially, we are reluctant

to disturb the district court's suppression decision," and we will affirm that decision so long as "any reasonable view of the evidence supports" it. Melo, 954 F.3d at 339 (quoting United States v. Boskic, 545 F.3d 69, 77 (1st Cir. 2008)).

Greaux argued that he was in custody when three armed officers questioned him for nearly 30 minutes in the back of an unmarked government vehicle. The evidence reasonably supports the district court's conclusion[3] that he was not "in custody" for Miranda purposes when he was questioned. Even if agents subjected Greaux to a custodial interrogation, however, the district court's factual findings, including its decision to credit most of the agents' testimony over Greaux's, were not clearly erroneous and plainly show that: (1) agents advised Greaux of his Fifth Amendment rights against self-incrimination and provided him the requisite Miranda warnings; (2) Greaux understood and knowingly and voluntarily waived those rights, both in writing and through his conduct; and (3) the agents did not engage in coercive official tactics, as claimed by Greaux, and thus, Greaux was not pressured or intimidated into waiving his rights against self-incrimination or making incriminating statements during the interview. See

---

[3] The district court's suppression decision consisted of Magistrate Judge Lopez's thorough and well-reasoned report and recommendation, Judge Besosa's order adopting the report and recommendation over Greaux's objections, and Judge Besosa's denial of Greaux's motion for reconsideration.

United States v. Simpkins, 978 F.3d 1, 11 (1st Cir. 2020) ("[T]he relevant question is not whether the defendant explicitly waived his Miranda rights but, rather, whether the defendant's conduct, evaluated in light of all the attendant circumstances, evinced a knowing and voluntary waiver." (citing United States v. Carpentino, 948 F.3d 10, 26 (1st Cir. 2020))).

We need not dwell on this issue. "[W]hen lower courts have supportably found the facts, applied the appropriate legal standards, articulated their reasoning clearly, and reached a correct result, a reviewing court ought not to write at length merely to hear its own words resonate." United States v. Wetmore, 812 F.3d 245, 248 (1st Cir. 2016) (quoting DeBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 71 (1st Cir. 2014)). So it is here. We nevertheless offer two additional observations.

First, the balance of factors used to determine whether a person was in custody for Miranda purposes clearly favored the prosecution here. See United States v. Crooker, 688 F.3d 1, 11 (1st Cir. 2012) ("To determine whether a person was in custody for Miranda purposes," the district court looks to the surrounding circumstances and several factors, including "where the questioning occurred, the number of officers, the degree of physical restraint, and the duration and character of the interrogation." (quoting United States v. Guerrier, 669 F.3d 1, 6 (1st Cir. 2011))). Agents never handcuffed, physically

- 9 -

restrained, or even touched Greaux, and they told him he was not under arrest. Further, Greaux was not arrested after the interview. While the interview took place inside an unmarked government vehicle, it occurred on a public street in front of Greaux's home, lasted a relatively short amount of time (just over 30 minutes), and none of the three interviewing officers (who were not in full police uniform) brandished their weapons or otherwise intimidated, badgered, or menaced Greaux in any way.[4] See Guerrier, 669 F.3d at 6 (finding no custody where interview atmosphere was "relatively calm and nonthreatening" and interview lasted approximately 20-25 minutes, "a relatively short time"); United States v. Hughes, 640 F.3d 428, 436-37 (1st Cir. 2011) (finding no custody where four officers did not physically restrain the defendant, there was no show of force, and the interview lasted 90 minutes (which we deemed a "relatively short duration")); United States v. Nishnianidze, 342 F.3d 6, 12, 14 (1st Cir. 2003) (deeming interrogation conducted by three officers non-custodial). The district court correctly determined that Greaux was not in custody.

---

[4] One of the agents admitted that he often spoke in a loud tone of voice and told Greaux in that tone that the agents knew he was lying. Greaux characterized the agent's tone as "annoyed." The district court correctly distinguished an officer's loud or annoyed demeanor from threatening or menacing conduct, and correctly found the former to not be coercive in light of the surrounding circumstances, which did not amount to a custodial setting.

Second, Greaux's suppression motion turned on several credibility determinations, and we reiterate that "we will not second-guess [the district court's] decision to credit [the agents'] testimony as [more] credible [than Greaux's] after it heard all the testimony and observed all of the witnesses' demeanors firsthand." United States v. Guzmán-Batista, 783 F.3d 930, 938 (1st Cir. 2015).

## 2. Sufficiency of the Evidence

"We review the district court's denial of the defendant's motion for judgment of acquittal de novo." United States v. Oliver, 19 F.4th 512, 516 (1st Cir. 2021). In the process, "we scrutinize the evidence in the light most hospitable to the jury's verdict, draw all reasonable inferences to the government's benefit, 'and ask whether a rational jury could find that the government proved all the elements of the offense[s] beyond a reasonable doubt.'" Id. (quoting United States v. Fuentes-Lopez, 994 F.3d 66, 71 (1st Cir. 2021)). We will uphold a conviction if the "verdict finds support in a plausible rendition of the record." Id.

There was a mountain of trial evidence to convict Greaux on the enticement and transportation charges. The victim's testimony, the "WhatsApp" messages, and Greaux's admission that he

- 11 -

knew JFR was 15 at the time he had sex with her,[5] all supported the jury's finding that Greaux used a means of interstate commerce (WhatsApp) to knowingly persuade, induce, or entice the minor victim to engage in criminal sexual activity. See P.R. Laws Ann. tit. 33, § 5191(a) (criminalizing sex with a person under the age of 16).[6]

Greaux's arguments as to the dates that certain photographs were created or JFR's alleged initiation of certain communications fail. Even if JFR appeared to initiate some message exchanges, Greaux initiated others. Indeed, the trial evidence showed that Greaux groomed JFR, his minor student and mentee, exploiting his position of authority to gain her trust before he sought an impermissible sexual relationship with her. Once he gained that trust, Greaux used WhatsApp to express his sexual desires[7] to JFR and to arrange for a meeting place for them to have

---

[5] Greaux admitted during his interview with agents that he was JFR's teacher and mentor and understood he was committing a crime by having sexual relations with a minor. He also detailed the nature of his oral and vaginal sex with JFR, and, when confronted with screenshots of his WhatsApp messages with JFR, Greaux explained that he used coded words to describe sexual content and his sexual desires toward JFR, and explained another message as him wanting to go to JFR's hometown of Cidra to pick her up to engage in sexual intercourse.

[6] Greaux does not dispute that WhatsApp constitutes a facility or means of interstate commerce for purposes of the enticement statute.

[7] A rational jury could have found that Greaux both explicitly and implicitly (by using code words for certain sex acts he wished to engage in with JFR) enticed, induced, coerced, or persuaded JFR

- 12 -

sex.  He also used WhatsApp to request and receive sexual images from her.  "[W]hen a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity."  Montijo-Maysonet, 974 F.3d at 41-42 (quoting United States v. Goetzke, 494 F.3d 1231, 1237 (9th Cir. 2007)).  That is precisely what the trial evidence showed here.

Moreover, Greaux's contention that JFR allegedly agreed to have sex – a finding we do not make – does not mean Greaux did not persuade, entice, or induce her.  We now join other circuits in holding that such evidence, if it existed, does not change the analysis; a defendant could be found to persuade, entice, or induce a victim in violation of Section 2422 notwithstanding purported evidence that the victim agreed to engage in sexual activity.  See, e.g., United States v. York, 48 F.4th 494, 500 (7th Cir. 2022) ("[W]e decline to apply a rule that a defendant can possess the intent to 'persuade, induce, entice, or coerce' only if a defendant

_____

to have sex with him.  We have found that Congress "meant to cast a broad net . . . to catch predators who use the Internet to lure children into sexual encounters" by using verbs that "plainly reach implicit coaxing or encouragement designed to 'achieve . . . the minor's assent' to unlawful sex."  United States v. Montijo-Maysonet, 974 F.3d 34, 42 (1st Cir. 2020) (quoting United States v. Dwinells, 508 F.3d 63, 71 (1st Cir. 2007)).

- 13 -

manages to induce an unwilling minor to engage in sexual activity. . . . The focus is therefore on the defendant, not the victim."); United States v. Zupnik, 989 F.3d 649, 654 (8th Cir. 2021) ("Our precedent makes clear that a defendant can be found to 'persuade' or 'entice' even a seemingly 'willing' minor."); United States v. Peterson, 977 F.3d 381, 389-90 (5th Cir. 2020) (rejecting argument that the government must show that the minor was "unwilling" until the defendant's actions persuaded the minor to engage in sexual activity); United States v. Dhingra, 371 F.3d 557, 568 (9th Cir. 2004) ("So long as a defendant's actions constitute the act of persuading, inducing, enticing, or coercing a minor to engage in criminal sexual activity, § 2422(b) applies" so as not to "mistakenly change[] the focus from the defendant to the victim").

Additionally, because Puerto Rico's age of consent is 16 years old, JFR could not legally consent to have sex with Greaux. See P.R. Laws Ann. tit. 33, § 5191(a).

Ample trial evidence also supports Greaux's transportation conviction. To satisfy this charge, the government was required to show that Greaux transported a minor within Puerto Rico with the intent to have sex. See Montijo-Maysonet, 974 F.3d at 44 ("Puerto Rico is a 'commonwealth' within the meaning of the [transportation statute]."). JFR testified that Greaux drove her in his vehicle to his vacant homeschool in Cayey, where they would have sex. She further testified that she had sex with Greaux at

the Albergue school and in Greaux's vehicle.  Greaux's sufficiency challenges to his transportation and enticement convictions accordingly fail.

**3. Appellant's Other Challenges**

Greaux also argues that the district court made five additional errors, the cumulative effect of which deprived him of a fair trial and prevented him from mounting a full defense. Greaux failed to preserve several of these claims of error.  We review preserved challenges to evidentiary rulings for abuse of discretion.  See United States v. Veloz, 948 F.3d 418, 431 (1st Cir. 2020).  We review unpreserved challenges for "plain error only."  United States v. Etienne, 772 F.3d 907, 913 (1st Cir. 2014).  "We reverse only sparingly in the plain error context," and to prove plain error, Greaux "bears the heavy burden of demonstrating (1) that an error occurred, (2) which was plain or obvious, (3) affected his substantial rights, and (4) 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'"  Id. (quoting United States v. Whitney, 524 F.3d 134, 139-40 (1st Cir. 2008)).  We address each alleged error, in no particular order of importance.

**Exclusion of Prior Proceeding Involving JFR**.  Greaux first argues that the trial court abused its discretion by excluding, in limine, evidence regarding an earlier criminal proceeding involving a different coach and JFR.  The court did not

abuse its discretion, and properly excluded the evidence under Rule 412 of the Federal Rules of Evidence because Greaux was attempting to introduce it to prove JFR's sexual predisposition. See Fed. R. Evid. 412(a)(1), (2) (prohibiting this type of evidence for these very uses).

Greaux nevertheless argues for the first time on appeal that the exception to Rule 412 allowing admission where "exclusion would violate the defendant's constitutional rights" applies here because he needed the evidence to show the victim's motive and attack her credibility. Greaux fails to articulate why JFR's status as a victim of sexual assault by a different perpetrator has any bearing on her motives in the present case, to the extent those motives are even a relevant consideration for the jury. For example, Greaux does not allege that JFR falsely accused her prior perpetrator. In fact, that individual was convicted.

Nor has Greaux shown that the prior proceeding bears on JFR's credibility. See United States v. Roy, 781 F.3d 416, 421 (8th Cir. 2015) (noting that "our court has declared, 'unchastity of a victim has no relevance whatsoever to [the victim's] credibility as a witness'" and that evidence of prior sex acts have "little impeachment value because it does not contradict [the victim's] testimony about [the defendant]" (quoting United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009))). His newly raised theories as to the alleged admissibility of this evidence are

- 16 -

therefore speculative and legally unsupportable.[8]

Assuming this evidence held some impeachment relevance, any probative value of the evidence was substantially outweighed by the danger of unfair prejudice and inadmissible for that additional reason. See United States v. Gemma, 818 F.3d 23, 34 (1st Cir. 2016) ("[E]ven if we were to accept [the defendant's] contention that the evidence had some probative value with respect to his relationship with [the victim], the balance of probative and prejudicial effect is such that the court's decision [to exclude the Rule 412 evidence] could hardly be said to have violated his constitutional rights."); Elbert, 561 F.3d at 777 (affirming trial court decision that defendant in sex trafficking case could not impeach victims with prior instances of prostitution because "[a]ssuming any impeachment relevance . . . in other acts of prostitution, any probative value the evidence may have 'is substantially outweighed by the danger of unfair prejudice'" (quoting Fed. R. Evid. 403)). Indeed, such evidence "falls squarely within a class deemed so extremely prejudicial as to warrant special treatment under the Federal Rules of Evidence." Gemma, 818 F.3d at 35.

---

[8] As the government correctly points out, Greaux also failed to follow the required procedure under Rule 412(c) for determining the admissibility of such evidence. This failure alone is "sufficient grounds to uphold the district court's decision" to exclude the evidence. Roy, 781 F.3d at 421 (quoting United States v. Eagle, 137 F.3d 1011, 1015 (8th Cir. 1998)).

Finally, Greaux's complaints that the district court improperly limited his ability to confront JFR ring especially hollow considering that he chose not to cross-examine her during trial.  See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original)).  We therefore reject Greaux's first claim of error.

**Victim's Video Interview and Call Logs**.  Next, Greaux contends that the trial court violated his Confrontation Clause rights by denying his request to show a portion of a video-taped interview of the victim as part of his defense case.  Greaux is incorrect.  The trial court did not abuse its discretion in denying the request for the following reasons.

The interview was conducted in Spanish.  The Jones Act therefore required Greaux to provide an accurate English-language transcript of the interview to the jury.  See 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003) ("Providing an English-language transcript [of a recording] is more than merely useful when the recorded language is not English; for Jones Act purposes, it is necessary.").  Greaux

failed to follow this procedure and did not have an English-language transcript of the interview ready for presentation <u>during</u> the trial.[9]  See <u>Morales-Madera</u>, 352 F.3d at 8 ("Sound trial management and considerations of fairness caution that" a party provide English translations of recorded evidence to his opponent "adequately in advance" of trial.).

Notwithstanding the lack of an English-language translation, the trial court listened to the portions of the video (outside the presence of the jury) that Greaux sought to introduce and deemed them inadmissible.  This too was a sustainable exercise of discretion.  Greaux sought to introduce portions of the interview where JFR allegedly stated "that she was the one who sent the pictures to Alex, that it was her idea to send the photographs to Alexander Greaux," as this allegedly refuted "the charge that [Greaux] persuaded her to send him the photographs." As detailed above, however, the enticement charge turned on whether Greaux persuaded JFR to have sex with him, not whether he persuaded her to send sexually explicit photographs or whether she was an allegedly "willing" participant.  See <u>York</u>, 48 F.4th at 500 (noting

---

[9] Greaux did not request a delay in the trial.  Instead, after the jury rendered its verdict, Greaux moved to submit a certified English-language translation of the video interview.  Greaux's counsel, however, represented to the district court that he first received a copy of the original Spanish-language recording of the interview the Thursday before trial began.  Greaux therefore had ample time prior to the start of trial to obtain a certified English translation of the video interview.

that the "focus [of an enticement charge] is therefore on the defendant, not the victim"); see also Supra, § II, 2.[10]

**Allegedly Prejudicial Leading of JFR**.  Third, Greaux contends that the trial court impermissibly allowed the prosecutors to lead the victim through her key testimony.[11]  We acknowledge that the prosecutors at times used leading questions with JFR and that such questions normally "should not be used on direct examination except as necessary to develop the witness's testimony."  Fed. R. Evid. 611(c).  We nevertheless find that the trial court did not abuse its discretion in allowing such questioning under these circumstances.

"We afford the district court 'extensive discretion over the phrasing of questions,' because 'the trial judge is best situated to strike a practical and fair balance.'"  United States v. Vázquez-Larrauri, 778 F.3d 276, 289 (1st Cir. 2015) (quoting

---

[10] Greaux also contends that the district court erred in refusing to admit logs of telephone calls between Greaux and JFR. For similar reasons, the district court correctly excluded the "call log" evidence.  Greaux argues on appeal that these logs "would have established that [JFR] was the one who initiated the phone calls," but again, as discussed above, that fact, if true, has no probative value to the enticement or transportation charges. Greaux was also not prepared to authenticate the call logs, through either a representative of the cellular phone companies or a certified business record.  See Fed. R. Evid. 902 (11), (13), (14).

[11] Greaux raises a blanket challenge to the use of leading questions, rather than attacking the allegedly improper questions on a question-by-question basis.  That makes our task of determining whether the district court erred in allowing the questions especially challenging.

United States v. Hansen, 434 F.3d 92, 105 (1st Cir. 2006)). "[T]he use of leading questions . . . must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing him." United States v. Brown, 603 F.2d 1022, 1025-26 (1st Cir. 1979) (cleaned up).

It is readily apparent from the record that JFR became uncomfortable answering the prosecutor's questions when the questioning turned to the subject of her relationship with Greaux. At that point, she struggled even further to answer or respond to the questions. The court and prosecutor observed that she was shaking uncontrollably and extremely nervous. At one point, she asked for a break and had to consult with the victim witness coordinator. The prosecutor also asked for the court's permission to have the coordinator sit near, but not next to, JFR while she testified. The trial court appeared to grant that request and allowed some leading questions interposed with other non-leading questions.[12]

---

[12] It was in fact JFR, not the prosecutor, who introduced the notion that her relationship with Greaux became "sexual." JFR also answered "no" to some of the prosecutor's questions, forcing the prosecutor to clarify or re-word her questions. This suggests that the questioning did not "cross the fine line between stimulating an accurate memory and implanting a false one." Hansen, 434 F.3d at 105 (quotation marks omitted).

The trial judge, who is in the best position to assess JFR's capacity to testify, determined that some degree of leading questioning was appropriate. We see no abuse of discretion in that decision. See United States v. Cotto-Flores, 970 F.3d 17, 40 (1st Cir. 2020) ("[W]e weren't there to see the testimony unfold live; unlike the trial judge, we didn't see [the] witnesses face-to-face or appraise in person their demeanor and inflection. We can't see the distress on someone's face, or hear the stress in their voice, by reading their words in 12-point Courier New." (citation and quotation marks omitted) (quoting United States v. Pérez-Díaz, 848 F.3d 33, 38 (1st Cir. 2017))), cert. denied, 141 S. Ct. 1121 (2021).

While JFR was not an adverse party witness, she was a "hostile" witness in the sense that she was averse to answering certain questions due to her nervousness and discomfort testifying in Greaux's presence. See Rodriguez v. Banco Cent. Corp., 990 F.2d 7, 12-13 (1st Cir. 1993) ("A 'hostile' witness, in the jargon of evidence law, is not an adverse party but a witness who shows himself or herself so adverse to answering questions whatever the source of the antagonism, that leading questions may be used to press the questions home."); see also Fed. R. Evid. 611(c)(2) ("Ordinarily, the court should allow leading questions . . . when a party calls a hostile witness"). We do not suggest that JFR's nervousness and discomfort was antagonism, however, it was an

- 22 -

impediment to her direct examination. The district court was well within its discretion to allow the prosecutors to use leading questions to "develop coherent testimony from [JFR]." Hansen, 434 F.3d at 105.

The fact that JFR was 18 at the time of trial, as Greaux repeatedly points out, does not change our conclusion. The government has a "compelling" interest in protecting "minor victims of sex crimes from further trauma and embarrassment." Cotto-Flores, 970 F.3d at 38 (quoting Maryland v. Craig, 497 U.S. 836, 852 (1990)). Such protection may include using some leading questions to help victims (including those who recently turned 18) maintain their composure and elicit information about the underlying events while confronting their perpetrators. See Fed. R. Evid. 611(a)(3) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment."); cf. United States v. Grassrope, 342 F.3d 866, 869 (8th Cir. 2003) ("It is not uncommon that the precise physiological details of sexual assault must be elicited by focused questioning.").

Lastly, to the extent the district court erred in allowing leading questions (again, a finding we do not make), any error was harmless because Greaux does not claim that the questions "prompted inaccurate testimony" from JFR, nor does the record

support such a claim.  United States v. Rivera-Rodríguez, 617 F.3d 581, 594 (1st Cir. 2010).

**Allegedly Prejudicial Variance**.  Next, Greaux argues that there was a prejudicial variance between the indictment and the evidence presented at trial on the transportation charge. Because he did not properly raise this argument below, plain error review applies.  There was no error, let alone plain error.  The indictment referenced travel from Salinas to "a residence located in Cidra" to engage in criminal sexual activity, while the trial evidence showed travel within Cayey.  The indictment, however, also referenced offense conduct "in the District of Puerto Rico, and elsewhere within the jurisdiction" of that district and was thus broad enough to encompass the travel proven at trial.  See United States v. Escobar-de Jesus, 187 F.3d 148, 172 (1st Cir. 1999) (noting "our reluctance to characterize what happened [there] as a variance at all, given the breadth of the indictment's description of the physical location of the attempted importation" as including, as here, "elsewhere and within the jurisdiction of [the District of Puerto Rico]").

Moreover, to prove the transportation charge, the prosecution only had to show travel within the Commonwealth of Puerto Rico with the intent to engage in criminal sexual activity. See Supra, § II, 2.  Proving that Greaux traveled from Salinas to Cidra, versus within Cayey, was thus not an essential element of

the crime.  See United States v. Ayala, 289 F.3d 16, 22 (1st Cir. 2002) ("A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored." (quoting United States v. Miller, 471 U.S. 130, 136 (1985))).  Similarly, Greaux's defense was not where he traveled within Puerto Rico, but whether he traveled with JFR at all and for what purpose, and was thus not impeded by the alleged variance.[13]  See United States v. Seng Tan, 674 F.3d 103, 110 (1st Cir. 2012) (noting that a prejudicial variance leaves the defendant "so in the dark about the charge against h[im] that []he could not prepare a defense or plead double jeopardy to stop a second prosecution for the same crime").

To the extent this could be considered a variance, it was neither material nor prejudicial.  See United States v. Arcadipane, 41 F.3d 1, 6 (1st Cir. 1994) (noting that where an indictment gives a defendant "particular notice of the events charged, and the proof at trial centers on those events, minor differences in the details of the facts charged, as contrasted to those proved, are unlikely to be either material or prejudicial.");

---

[13] The district court did not include the specific towns or regions within Puerto Rico in its final instructions to the jury, noting only that "travel wholly within the Commonwealth of Puerto Rico constitutes transportation within a commonwealth, territory, or possession of the United States" for purposes of § 2423(a). Greaux's counsel did not object to this instruction.  Nor did defense counsel raise the alleged variance in travel locations in his closing argument.

Escobar-de Jesus, 187 F.3d at 172 (finding no material or prejudicial variance where, as here, the precise "location of the attempted importation was not an element of the crime," both of the towns were within the court's jurisdiction, and the defendant could not show that the "indictment's allegations caused him to be misinformed of the charges against him").  We accordingly reject Greaux's fourth claim of error.

**Admission of Trial Exhibit 5.**  Fifth and finally, Greaux argues that the trial court erred by admitting the prosecution's trial Exhibit 5.  Exhibit 5 contained screen shots from JFR's iPhone of WhatsApp messages between Greaux and JFR.[14]  Greaux challenges the messages' authenticity for the first time on appeal, contending that the messages show the cell phone provider as "CLARO" and neither he nor the victim used that provider.[15]

Greaux agreed to Exhibit 5's admission at trial, so plain error review applies (if waiver does not), and we find no error. The government introduced the exhibit through the victim's mother, who had discovered the messages on her daughter's phone.  Defense counsel did not cross-examine the mother about the exhibit or

---

[14] Greaux's briefs also reference trial Exhibit 6 as containing screenshots from his cell phone.  Exhibit 6, however, was an extraction report from Greaux's phone that did not contain any screenshots.  Greaux's challenge to the admission of screenshots thus appears to be directed at Exhibit 5 only.

[15] Because the screenshots were taken from JFR's phone, the identity of Greaux's cell phone provider is irrelevant.

messages. Importantly, Greaux did not introduce evidence to the jury that showed JFR used a cell phone provider other than Claro.

The government also had two law enforcement agents testify about Exhibit 5 and further authenticate its contents. The agents – one of whom had performed an extraction of the victim's phone to obtain the text messages – confirmed that Exhibit 5 contained messages they had extracted from the victim's phone. See Fed. R. Evid. 901(b)(1). Defense counsel did not cross examine the agents about Exhibit 5 or otherwise challenge the authenticity or veracity of the messages themselves or the extraction reports. Greaux's admissions and the victim's testimony also corroborated the contents of the messages. The trial court therefore did not err in admitting this evidence.

Because we find that the district court did not commit any individual errors, we likewise find that there was no cumulative error warranting a new trial or vacatur of Greaux's conviction.

## III. Conclusion

For the reasons stated above, the judgment of the district court is **affirmed**.