In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2557

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON NICOSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 12 CR 50046-1 — **Frederick J. Kapala**, *Judge.*

ARGUED JUNE 9, 2015 — DECIDED JULY 16, 2015

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant is sexually attracted to children, specifically girls 5 to 12 years old. So far as we know he does not molest girls, but he solicits, obtains, views, and makes available for distribution videos and images of these very young girls in lewd poses. He pleaded guilty to two counts of transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1), which subjects anyone who "knowingly mails, or transports or ships using any means or

facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography" to a maximum sentence of 20 years (40 for certain recidivists). *Id*., § 2252A(b)(1). Each count was for transporting child pornography over the Internet. The judge imposed consecutive sentences on the defendant—240 months (20 years) on the first count and 55 months (about four and a half years) on the second, for a total of 295 months (almost twenty-five years).

The presentence report had calculated the defendant's guidelines sentencing range to be 151 to 188 months on the basis of U.S.S.G. § 2G2.2. But the district judge decided to base the defendant's sentence on another guideline, U.S.S.G. § 2G2.1, designed for violators not of 18 U.S.C. § 2252A(a)(1) but of 18 U.S.C. § 2251(a), which subjects anyone who induces a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct" to a maximum prison sentence of 30 years (or 50 years or even life, depending on the defendant's record of recidivism). *Id*., § 2251(e). In applying guideline section 2G2.1, despite its connection to a statute that the defendant was not convicted of violating, the judge relied on section 2G2.2(c)(1). That section, applicable to violators of 18 U.S.C. § 2252A(a)(1), provides that if the defendant's offense "involved … seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply § 2G2.1." Section 2251(a) prescribes a maximum sentence, as we said, of 30 years. Yet the judge, noting that the guidelines range applicable to the defendant under guideline section

2G2.1 was 324 to 405 months, sentenced him as we said to 295 months—almost 25 years—even though the maximum sentence for violating section 2252A(a)(1) is only 20 years. But remember that the 295-month sentence was actually two sentences, each for a different count of violating section 2252A(a)(1), and the judge imposed the two sentences consecutively, which the defendant does not challenge.

For guideline section 2G2.1 to apply, as explained in section 2G2.2(c)(1), the defendant had to have sought "by notice or advertisement, a minor to engage in sexually explicit conduct," and had to have done that "for the purpose of producing a visual depiction of such conduct or … transmitting a live visual depiction" of it. To understand the visual depiction, one needs to understand the relevant technology. A webcam[era] is "a video camera that feeds or streams its image in real time to or through a computer to computer network. When 'captured' by the computer, the video stream may be saved, viewed or sent on to other networks via systems such as the internet, and email as an attachment." "Webcam," *Wikipedia*, https://en.wikipedia.org/wiki/Webcam (visited July 9, 2015). The webcam can either be built into the user's computer, in which case it generally faces the operator of the computer and takes a video of him that can be transmitted via the computer to another person's computer, or it can be detachable from but connected to the computer by a wire called a USB cable. The field of vision of the external webcam is thus not limited to what the operator of the computer can see. But unlike a conventional camera, a webcam does not store any of the images it photographs or records. Instead it conveys them through the cable to the computer, where they are stored on the computer's hard

drive and can be accessed through a folder on the computer screen.

A number of videos of child pornography were found on the defendant's two computers, but to be within the scope of guideline section 2G2.1 he had to have enticed or sought to entice a minor to pose for a video or camera shot while the minor was engaged in sexually explicit conduct. He could thus have had in his computer any number of obscene videos without having had anything to do with their production, in which event the guideline section would not be applicable, as he would not have solicited the underage performer. But the government argued and the judge agreed that the defendant's webcam had recorded (and transmitted to his computer, where they were found) three still images of a "live" obscene performance by one of the young girls—what is called a "live feed," "live" meaning that the performance shown on the computer screen and recorded in part by the webcam occurred as it was being filmed. The inference that the images were recorded by a webcam was based on the low quality of the recordings and the presence of screen reflection.

The significance of this evidence was that the defendant was more likely to have solicited a live performance for transmission to him than a performance that would be recorded and the video of it received by him at some subsequent time; for if the recordings weren't live, he wouldn't have to settle for low-quality images. There was evidence that in online chat rooms of persons sharing his sexual interests the defendant had often expressed a desire for videos of live sexual performance by young girls, and from this the

government and the judge inferred that he had solicited the girl to perform in the video that he photographed.

An abiding puzzle is why he was content to take *still* images of pornographic videos displayed on his computer screen; his webcam could take videos, which could have been transmitted to his computer and thus be available to him to watch whenever he wanted. But it's enough that there is a basis for a reasonable inference that he solicited the live performance that he photographed with his webcam. He unquestionably sought child-pornography videos from his chat-room cronies, and that seeking could be expected to induce one or more of the cronies to arrange for a live performance and beam it to him, in which event he would be the principal in the solicitation of the performing girl, and the crony his agent. His possession of the recording (in the form of the still photos) of a live performance was evidence that he had sought "by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."

It's true that the government's attempt to prove, from blurs in the still photos that the webcam took and transmitted to the defendant's computer, that the computer screen was indeed exhibiting a live feed was weak. But it is difficult to see why he would have been taking still photos of a video that he had downloaded if it was *not* a live feed and therefore a video that he could watch on his computer at any time. And it is undeniable from transcripts of his conversations in the chat rooms that he indeed sought minors to engage in sexually explicit conduct for the purpose of producing the live type of visual depiction that gratified his sexual tastes. That made him subject to the section 2G2.1 guideline

regardless of whether his webcam recorded a live performance exhibited on his computer screen.

                                                        AFFIRMED