In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-2901

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY JAY YORK,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:20-CR-40050-DWD-1 — **David W. Dugan**, *Judge.*

_____

ARGUED FEBRUARY 24, 2022 — DECIDED AUGUST 31, 2022

_____

Before ROVNER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* A jury convicted Jeffrey Jay York of attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and attempting to use interstate facilities to transmit information about a minor, in violation of 18 U.S.C. § 2425. The charge was based on York's communications with 15-year-old "Brionica," who was really an FBI agent. York claimed entrapment, arguing that

the government induced him and that he lacked the predisposition to commit the crimes. The jury rejected this defense. On appeal, York raises sufficiency of the evidence challenges. But we find the evidence sufficient to support York's convictions and affirm.

**I**

In March 2020, FBI Agent Brian Wainscott created an undercover account and posted an advertisement in the "Missed Connections" section of Craigslist. The advertisement read: "Bored No School looking to make $ for favors." The post did not include details about the poster's sex, age, or name, but it was intended to identify adults interested in having sexual contact with a minor.

York, a 51-year-old correctional officer, responded to the advertisement. In his first message, York asked whether the post was from a male or female and inquired about the favors being offered. Agent Wainscott became "Brionica James," and told York that he was a 15-year-old girl living in Marion, Illinois.

After Wainscott told York he was a 15-year-old girl, York responded: "I can't do anything but look at you [sic] sexy picks with clothes on." But indicated that he would continue to exchange messages with "Brionica." "Brionica" told York that she wasn't interested in just talking, and York responded: "Believe me I know. You are a very beautiful sexy thing … You never know where it might end up. I have to get to know you since you're so young. I love your eyes and those sexy lips." The conversation continued.

The next day, York initiated conversation with "Brionica." York asked "Brionica" about her sexual history, whether she

lived with her parents, and how she got out of the house to "hook up" with older men. York asked "Brionica" about sex toys, sexual positions, and her favorite sexual activity. He then suggested that she send him a sexually suggestive picture. York wrote: "Well you are young. I want to know that you are real. Lay a quarter on your boob and take a pic. You could have sent me a fake pic or you could even be a guy. Or a cop."

In response, Agent Wainscott sent York a legal, non-child pornographic image from his work archives that was like the image York requested. Satisfied with the photo, York proceeded to discuss the sexual acts he wanted to perform with "Brionica." York wrote: I want to suck on ur hard nipples then kiss my way down ur belly then tongue f*** your slick juicy p**** until you explode on my face then kiss and nibble on ur inner thighs while you catch your breath then make you c** again. When "Brionica" responded "Yes" and asked "when," York suggested that they meet at a public place.

York continued to discuss meeting arrangements with "Brionica." Later, York told "Brionica" that he would travel to Marion but explained that he would not do anything sexual during their first meeting because she was "very young," and he did not want to go to jail. On the day of the meeting, York drove around for 18–20 minutes looking for "Brionica." Law enforcement agents watched York and arrested him when he came near the planned meeting location.

A grand jury subsequently indicted York on one count of attempted enticement of a minor to engage in sexual activity under 18 U.S.C. § 2422(b) and one count of attempted use of interstate facilities to transmit information about a minor under 18 U.S.C. § 2425. York proceeded to a two-day jury trial.

At trial, Agent Wainscott testified that because York expressed sexual interest in "Brionica" after learning she was 15 years old, he continued conversing with him. Agent Wainscott testified that based on his training and experience, he recognized York as engaging in "proof of life" behavior by requesting an impromptu image of "Brionica" to confirm that she was real and not a "cop." Agent Wainscott also testified that it is common for individuals seeking sexual contact with a minor to suggest meeting in a public place. Agent Wainscott also retraced York's route and the jury saw a surveillance video of York as he drove around looking for "Brionica."

The jury also heard testimony about York's post-arrest discussions. Shortly after York's arrest, FBI agents, including Agent Wainscott, interviewed York. During that interview, York admitted that he was looking for "Brionica" and that what he had done "looks bad." York however, claimed that he was looking because he is "just a curious person." The jury also heard testimony about York's cellphone conversation with his girlfriend, in which he informed her that he had been arrested for talking to a 15-year-old or trying to hook up with a 15-year-old who he met online and was talking to for four days. At the close of the government's evidence, York moved for judgment of acquittal. The district court denied the motion.

York took the stand. He testified that even though "Brionica" said she was 15 years old, he thought she was an adult and continued sexually charged conversations with her because he wanted to find out who he was talking to. York also testified that he requested the picture to confirm that "Brionica" was who she was claiming to be. Finally, York testified that he did not believe he was speaking with a minor because

only adults are supposed to be on Craigslist. On cross-examination, York admitted that, after finding out that "Brionica" was 15 years old, he had over 70 exchanges with her, many of which he initiated. He also admitted that no one made him communicate via the internet, and no one influenced or persuaded him to talk to "Brionica."

After the defense rested, York renewed his motion for judgment of acquittal. The district court denied this motion. The district court submitted the case to the jury, along with an entrapment defense instruction. The jury convicted York on both counts. The district court sentenced York to the mandatory 120 months' imprisonment for Attempted Enticement, and a sixty-month concurrent sentence on Attempted Transmission of Information. This appeal followed.

## II

On appeal, York argues that the evidence put before the jury was insufficient to sustain his convictions. We review de novo the district court's ruling denying a motion for judgment of acquittal under Federal Rule of Civil Procedure 29. *United States v. Fitzpatrick*, 32 F.4th 644, 648 (7th Cir. 2022). In sufficiency challenges to jury verdicts, "we review the evidence presented at trial in the light most favorable to the government and draw all reasonable inferences in its favor." *Id.* at 649 (citation omitted). "We do not make credibility determinations or reweigh the evidence." *United States v. Hidalgo-Sanchez*, 29 F.4th 915, 924 (7th Cir. 2022). "We will overturn a conviction only if, after reviewing the record in this light, we determine that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* (citation omitted).

## A. Attempted enticement of a minor

We begin with York's challenge to his conviction for attempting to entice a minor under 18 U.S.C. § 2422(b), which provides in relevant part:

> Whoever, using … any facility or means of interstate or foreign commerce … knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in … any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be … imprisoned not less than 10 years[.]

18 U.S.C. § 2422(b). To sustain an attempt conviction, the government is required to prove that a defendant "acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense." *United States v. Coté*, 504 F.3d 682, 687 (7th Cir. 2007) (government met its burden where defendant intended to entice a person who he believed to be a minor into sexual acts and that he flew to Chicago to meet her).

York argues that the government failed to show that he (i) knowingly persuaded, induced, enticed, or coerced "Brionica" to engage in sexual activity and (ii) knew or believed that "Brionica" was 15 years of age. We address each argument in turn.

### 1. Knowingly persuade, induce, entice, or coerce

York argues that the government did not prove that he "acted with the specific intent" to commit attempted enticement of a minor. As an initial matter, the parties dispute the appropriate standard of review for this argument. The

government argues that York, though moving for judgment of acquittal, failed to submit this theory of enticement liability at trial, and therefore, plain error review applies. York disagrees, arguing that the claims raised in his motion for judgment of acquittal were enough to preserve this claim. We see no need to decide the dispute because York's argument fails under both standards of review.

As indicated in the statute, a conviction for attempt under § 2422(b) requires a finding that the defendant had an intent to attempt to induce, entice, or persuade a minor to engage in illegal sexual activity. *See United States v. Berg*, 640 F.3d 239, 246, 251–53 (7th Cir. 2011) (section 2422(b) "criminalizes an intentional attempt to achieve a mental state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor." (citation omitted)). York does not dispute that this is what the statute requires. He argues, however, that there is insufficient evidence that he acted to overcome the will of "Brionica" to engage in sexual activity, because "Brionica" made the offer and was already willing and interested in sexual activity.

For this argument, York relies on *United States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014). In *Hite*, the court considered the ordinary and plain meanings of the verbs persuade, induce, entice, and coerce. *Id.* at 1161. "Entice," the court noted, means to "lure, induce, tempt, incite, or persuade a person to do a thing." *Id.* Based on the ordinary meaning of the verbs induce, entice, and coerce, the *Hite* court concluded that § 2422(b) is "intended to prohibit acts that seek to transform or overcome the will of a minor." *Id.*

We reject York's argument and application of *Hite*. First, *Hite* is inapposite. *Hite* involved an adult intermediary in an

attempted enticement case, and in that scenario, the court concluded that the defendant's interaction with the intermediary must be aimed at transforming or overcoming the child's will to violate § 2422(b). This is distinguishable from York's case, which involves a direct, one-to-one communication with "Brionica." Though York was in reality speaking with an FBI agent, he believed that he was speaking with a minor. We therefore see no connection between the two cases. *See United States v. Zupnik*, 989 F.3d 649, 654 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 584, (2021) (*Hite's* "overcoming the will of a minor" analysis limited to adult intermediary cases).

Second, we decline to apply a rule that a defendant can possess the intent to "persuade, induce, entice, or coerce" only if a defendant manages to induce an unwilling minor to engage in sexual activity. Under § 2422(b), a minor's willingness or unwillingness to engage in sexual activity is irrelevant. *See United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004) ("The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."). As we've noted before, the "essence of [§ 2422(b)] is attempting to obtain the minor's assent" to sexual activity. *See United States v. Hosler*, 966 F.3d 690, 692 (7th Cir. 2020) (citation omitted). The focus is therefore on the defendant, not the victim. As long as York's actions constitute an attempt to entice "Brionica" to engage in sexual activity, the government satisfies § 2422(b). *Berg*, 640 F.3d at 246; *see also Zupnik*, 989 F.3d at 654 (8th Cir. 2021) (noting that a defendant can be found to "persuade" or "entice" even a seemingly "willing" minor); *United States v. Peterson*, 977 F.3d 381, 389–90 (5th Cir. 2020) (rejecting argument that the government must show that the minor was "unwilling" until the

defendant's actions persuaded the minor to engage in sexual activity).

Here, the government presented ample evidence for a jury to find that York attempted to entice "Brionica" to perform sexual activity. The jury was presented with over 70 exchanges York had with "Brionica" over a four-day period, in which York sought "Brionica's" assent to perform specific acts. In those exchanges, York asked about "Brionica's" sexual history and preferences, and how she went about getting out of the house to hook up with guys. York described the sexual acts he wanted to perform on "Brionica," and requested that "Brionica" send him a sexually suggestive photo of herself. In short, York's messages with "Brionica" were dominated by sexually explicit content, and once he obtained her assent, he discussed meeting with her in a public place. Based on these messages, it was reasonable for the jury to find that York knowingly attempted to entice "Brionica" to engage in sexual activity with him.

### 2. *Any person under 18*

York's second argument is that there was no evidence that he believed he was speaking with someone under 18. But we disagree; the government presented voluminous evidence from which a jury could reasonably conclude that York believed he was dealing with a 15-year-old girl. For one, "Brionica" told York her age. York then tried to confirm "Brionica's" identity by asking for a custom photo. After receiving the photo, York continued to have sexually charged conversations with "Brionica" and expressed trepidation regarding her age, stating that he did not want to go to jail because she was young. During the FBI interview, York expressed that he knew his actions "looked bad" and during a telephone

conversation with his girlfriend, he explained that he was be-
ing arrested for trying to hook up with a 15-year-old girl.

York points to his own self-serving testimony, in which he
shared with the jury that he did not believe that he was com-
municating with a minor because, in part, only adults were
on Craigslist and the photograph looked like an adult. But the
jury was able to make credibility determinations about York's
testimony. In reviewing York's sufficiency of the evidence ar-
gument, we do not make our own credibility findings, and we
review the evidence in the light most favorable to the govern-
ment. *See United States v. Stevenson*, 680 F.3d 854, 857 (7th Cir.
2012). York's testimony does not change the fact that there
was still ample evidence for the jury to reasonably find that
York believed he was communicating with a minor and in-
tended to entice her.

## B. Attempted use of Interstate Facilities to Transmit Infor-mation about a Minor

York also challenges the sufficiency of the evidence for his
conviction under 18 U.S.C. § 2425. Section 2425 provides that
"[w]hoever, using the mail or any facility or means of inter-
state or foreign commerce … knowingly initiates the trans-
mission of the name, address … of another individual, know-
ing that such other individual has not attained the age of 16
years, with the intent to entice, encourage, offer, or solicit any
person to engage in any sexual activity for which any person
can be charged with a criminal offense, or attempts to do so"
shall be punished accordingly. 18 U.S.C. § 2425.

York's challenge to his conviction under § 2425 is the same
as his challenge under § 2422(b): that there is insufficient evi-
dence to show that York believed he was dealing with a 15-

year-old girl. However, as we concluded above, there was sufficient evidence for the jury to conclude that York believed he was speaking with a minor. York attempted to refute that evidence but based on the evidence viewed in the light most favorable to the prosecution, the jury could have found that he violated § 2425 beyond a reasonable doubt.

## C. Entrapment

Finally, York argues that the government did not present sufficient evidence to support the jury's rejection of his entrapment defense. Entrapment is an affirmative defense and is applicable if a defendant puts forth evidence that supports two elements: (1) government inducement of the crime and (2) lack of predisposition on the part of the defendant to engage in criminal conduct. *United States v. Mayfield*, 771 F.3d 417, 424 (7th Cir. 2014).

As to the first element, inducement means more than mere government solicitation of the crime. *Id.* at 432. "[T]he fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement." *Id.* at 434. Rather, a defendant has to show that the government solicited the crime "plus some other government conduct." *Id.* Other conduct could be "repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward … pleas based on need, sympathy, or friendship or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts." *Id.* at 435.

Regarding the second element, a defendant is predisposed to commit the crime "if he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." *Id.* at 438. "The defendant's predisposition is measured at the time the government first proposed the crime, but the nature and degree of the government's inducement and the defendant's responses to it are relevant to the determination of predisposition." *Id.*

Here, the district court applied the *Mayfield* standard in its analysis of the entrapment issue, and submitted the issue to the jury, which ultimately rejected York's defense. The government presented more than enough evidence for the jury to reasonably conclude that the government did not induce York, and that York was predisposed to the crime. The jury had access to York's more than 70 exchanges with "Brionica" which spanned four days. The jury also heard testimony from York in which he admitted on cross-examination that he initiated conversations with "Brionica," and did so several times after finding out that she was a minor. York also admitted that no one made him communicate via the internet or influenced or persuaded him to talk with "Brionica." We have reviewed the evidence presented at trial and find that the jury had sufficient evidence to reject York's entrapment defense.

## III

In sum, the evidence was sufficient to support York's conviction for both attempted enticement of a minor into sexual activity and attempted use of interstate facilities to transmit information about a minor. The evidence was also sufficient for the jury to find that the government did not entrap York. Accordingly, we affirm the judgment of the district court.