In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1156

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN HARTLEROAD,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:21-cr-00016-HAB-SLC-1 — **Holly A. Brady**, *Judge.*

———————————

ARGUED JANUARY 11, 2023 — DECIDED JULY 11, 2023

———————————

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A jury found Kevin Hartleroad guilty of attempting to sexually exploit a child in violation of 18 U.S.C. § 2251(a) and (e). That statute prohibits, among other acts, employing or using a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction or transmitting a live visual depiction of such conduct. The indictment charged him only with producing, but the

jury was instructed that Hartleroad could be found guilty under either prong.

On appeal, Hartleroad contests the sufficiency of the evidence sustaining his conviction. For the first time before us, he also argues (1) that the jury instructions constructively amended the indictment, and (2) that, in any event, the indictment charged conduct not prohibited under § 2251(a). We disagree with Hartleroad's challenges and affirm his conviction.

## I. Background

Kevin Hartleroad contacted the author of an online post soliciting persons interested in participating in sexual conduct with minors. That post expressly excluded those interested in "role play" or "fantasy." The author claimed to be a stepfather who was engaged in sexual relations with his fourteen-year-old daughter, but he was actually undercover FBI Task Force Officer Christopher McCarty.

The two began exchanging messages and McCarty learned that Hartleroad was interested in having sex with the fictitious minor. Hartleroad told McCarty that such occasions were "hard to find [for] real." They discussed setting up a Skype call before planning to meet in person, when Hartleroad would engage in sexual conduct with the minor.

Due to the pandemic, Hartleroad initially agreed to limit the interaction to the Skype meeting, during which Hartleroad would view McCarty engaging in sexual conduct with the minor. McCarty suggested that Hartleroad direct the sexual conduct to be depicted during that meeting. Hartleroad expressed no hesitancy with this idea. He responded it "sounds incredible" and "I love the idea of telling you two what to do." He also sent McCarty a photograph of

the child on which he had ejaculated, addressing it to the child and telling McCarty the photo was "for [him] to show her." During a break in the conversation, Hartleroad reinitiated contact and expressed his desire to speak over Skype and "direct." In later messages, McCarty told him the interaction generally "works best" when "whoever we are Skyping with makes a list of what they want to see." Hartleroad said this suggestion sounded like an "excellent idea" to him and asked if he should "come up with a script." Hartleroad then drafted a script of sexual conduct he expected to be depicted by the minor and McCarty and sent it to McCarty. He expressed to McCarty his hope that the child had liked the script.

The two continued to discuss setting a time for the Skype meeting, with Hartleroad offering to join the call during work hours. At one point Hartleroad thanked McCarty for "bearing with" him as he determined whether his service would be good enough to Skype from work using his phone, insisting the three "will m[ak]e this happen." They eventually agreed on a date and before the meeting took place, McCarty asked Hartleroad if he was "sure [he] want[ed] to do this" given that the fictitious minor was "under age." Hartleroad responded, "It's cool. I'm ready[,]" and he joined the Skype call. But McCarty ended the call early by claiming his wife had come home. McCarty testified at trial that Hartleroad sent him "a message on Skype that said that [Hartleroad was] glad it didn't happen."

McCarty later posted similar messages about the fictitious stepdaughter on multiple online platforms. In response to these new posts, Hartleroad reinitiated contact with McCarty and admitted he "knew she was" a minor and he "spooked," but he was "glad to find [McCarty] again." When McCarty

suggested they arrange another virtual meeting, Hartleroad said he "would still love to do Skype with the two of you and direct."

As described above, a grand jury indicted Hartleroad with a single count of attempting to sexually exploit a child in violation of 18 U.S.C. § 2251(a) and (e). He pleaded not guilty, and the case went to trial. The government presented evidence, including McCarty's testimony, and rested. Hartleroad moved for judgment of acquittal, which the district court took under advisement. Hartleroad also testified and renewed his acquittal motion at the close of evidence.

The district court and counsel discussed the jury instructions on more than one occasion. Revisions were proposed and statements were made as to whether those changes conformed to the statute and the indictment, but the language of the final jury instructions and the indictment ultimately differed. Hartleroad was indicted for attempting to employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of *producing* a visual depiction, or a live visual depiction, of such conduct. The jury received a similar instruction but was told Hartleroad must have acted for the purpose of *transmitting* a live visual depiction of such conduct. The jury returned a guilty verdict, and the court denied Hartleroad's motion for judgment of acquittal.

## II. Discussion

### A. Sufficiency of the Evidence

Hartleroad first challenges the sufficiency of the evidence sustaining his conviction. We address only whether there is sufficient evidence that he acted for the purpose of producing

a visual depiction, since he does not contest that crime was properly charged in the indictment. We also limit our review to whether Hartleroad attempted one of the acts the statute prohibits, "employs" or "uses" a minor for purposes of producing a visual depiction. The six verbs that appear in the first phrase of § 2251(a) are listed in the disjunctive, so a conviction may be sustained under any one of them. *See* § 2251(a); *United States v. Howard*, 968 F.3d 717, 721–22 (7th Cir. 2020).

On a challenge to the sufficiency of the evidence supporting a conviction, we review the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *United States v. York*, 48 F.4th 494, 499 (7th Cir. 2022). "We will overturn a conviction only if, after reviewing the record in this light, we determine that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* (quoting *United States v. Hidalgo-Sanchez*, 29 F.4th 915, 924 (7th Cir. 2022)). To sustain a conviction for attempt, the government must prove the defendant "acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense." *Id.* (quoting *United States v. Coté*, 504 F.3d 682, 687 (7th Cir. 2007)).

We divide our discussion into three topics:

- whether Hartleroad's conviction may be upheld even though he never directly communicated with the minor;

- whether Hartleroad's conviction may be sustained based on the nature of his communication with an adult; and

- whether the government has met its burden
of demonstrating Hartleroad acted with spe-
cific intent and that he took a substantial step
toward completing the offense.

*Direct Communication with a Minor.* Hartleroad contends
that his conviction cannot be upheld because he never spoke
with the minor. Even if direct communication is not neces-
sary, he submits that his messages with an adult are a step
removed from "using" or "employing" the minor to engage
in sexually explicit activity.

To us, the plain meaning of the verbs "uses" and "em-
ploys" in § 2251(a) do not require a defendant to communi-
cate directly with a child. The plain meaning of "use" is "[t]o
make use of, to convert to one's service, to avail one's self of,
to employ[,]" and "[t]o leave no capacity of force or use in."
*Use*, BLACK'S LAW DICTIONARY (5th ed. 1979). The term "em-
ploy" means:

> [t]o engage in one's service; to hire; to use as an
> agent or substitute in transacting business; to
> commission and intrust with the performance
> of certain acts or functions or with the manage-
> ment of one's affairs; … when used in respect to
> a servant or hired laborer, the term is equivalent
> to hiring, which implies a request and a contract
> for a compensation[; and] … [t]o make use of, to
> keep at work, to entrust with some duty."

*Employ*, BLACK'S LAW DICTIONARY (5th ed. 1979). Neither term
suggests that direct communication with the object of the
verb, a minor, is necessary. *See also United States v. Lee*, 603
F.3d 904, 913 (11th Cir. 2010) (explaining that the terms

"employs" or "uses" in § 2251(a) do not "contemplate[] direct interaction with a minor aimed at oral persuasion"). So Hartleroad's contention here falls short.

*Nature of Communication with an Adult.* Although direct communication with a minor is not required to sustain a conviction, our court has not yet determined what types of communication with an adult can support a conviction under § 2251(a). Hartleroad argues that he must have taken some action to cause the minor's direct engagement in sexually explicit conduct to sustain a conviction under § 2251(a), citing *Howard*. As an example, he refers to *United States v. McMillan*, 744 F.3d 1033 (7th Cir. 2014), for the proposition that the court has required some attempt to communicate with a child through an intermediary to sustain a conviction under 18 U.S.C. § 2422(b). We understand him to argue that he neither intended nor took a substantial step toward causing a child to engage in sexually explicit conduct, but rather was simply engaging in obscene speech with another adult.

Hartleroad's arguments miss the mark. First, as a factual matter, he attempted to communicate with the minor through McCarty by sending the photograph addressed to the minor and by asking whether the child liked his script.

Second, in *Howard* we considered whether a defendant who filmed himself masturbating next to a clothed, sleeping child violated § 2251(a) by "using" the minor "as an object of sexual interest to produce a visual depiction of *himself* engaged in solo sexually explicit conduct." 968 F.3d at 718. Howard interacted with the minor in that case, *see id.* at 719, so Hartleroad's reliance on *Howard* does not help his case.

Third, Hartleroad cites *McMillan* as requiring an attempt to communicate with a child through an intermediary. But contrary to Hartleroad's suggestion, *McMillan* did not hold that such an attempt was required. *See* 744 F.3d at 1036 (noting that "[s]ome courts would permit conviction solely on the basis of an adult's attempt to persuade another adult to allow the defendant to engage in sexual conduct with the minor" but declining to decide whether that reading is consistent with the statutory language).

*Government's burden under § 2251(a)*. The government must meet its statutory burden to prove Hartleroad acted with specific intent and took a substantial step toward completing the crime.

### 1. *Specific Intent*

There is sufficient evidence that Hartleroad intended to use a minor to engage in sexually explicit conduct for the purpose of producing child pornography.[1]

In *Lee*, the Eleventh Circuit sustained a defendant's conviction under the "uses" prong of § 2251(a) based on his interactions with an adult intermediary. 603 F.3d at 912–13, 918. The defendant's intent to use minors to produce child pornography was evidenced by the fact that he "actively planned the production of photographs that depicted … minor[s] … in

---

[1] Hartleroad distinguishes between the meaning of "producing" and "transmitting" as used in § 2251(a). "[P]roducing" is defined at 18 U.S.C. § 2256(3) as "producing, directing, manufacturing, issuing, publishing, or advertising." In this opinion, we use the term "producing" synonymously with "directing." We therefore need not address Hartleroad's argument that understanding the term "producing" to encompass "transmitting" renders the latter superfluous.

graphic sexual poses" through an intermediary. *Id.* at 918. Specifically, the defendant had "described how many photographs he wanted of each girl, how he wanted the girls to pose, and provided his home address so that he could view the finished product." *Id.*

Hartleroad drafted a script of sexual conduct to be performed by a minor, sent that script to McCarty, and planned and joined a Skype call for that conduct to be depicted. As in *Lee*, a rational jury could have concluded that constitutes sufficient evidence of his specific intent to use a minor in violation of § 2251(a).

A rational jury also could have concluded that Hartleroad understood a real minor would be involved. After the Skype meeting, Hartleroad admitted he "knew she was" a minor. Further, he began the entire interaction by responding to a post soliciting persons interested in sexual relations with minors and expressly excluding those interested in "role play" or "fantasy." Hartleroad additionally stated that opportunities to engage in sexual relations with minors were "hard to find for real."

Hartleroad also argues that the evidence demonstrated, at most, his intent to *view* child pornography, rather than to *produce* it, and he stresses that he was just responding to McCarty's prompts. But the communications reflected in the record were enough to permit a trier of fact to conclude that his role was that of a producer, not a mere viewer. Requests to have a minor take and send pictures matching certain descriptions are sufficient to support specific intent to produce child pornography. In the context of an ineffective assistance of counsel claim, we suggested that sufficient evidence supported a conviction for producing under § 2251(a) when the

defendant directed children to take sexually explicit photographs matching his descriptions and send them to him. *See United States v. Merrill*, 23 F.4th 766, 767–68, 770, 771 (7th Cir. 2022) (describing that the defendant "directed" a "real-time photo shoot" in concluding that the evidence was sufficient to sustain a production conviction). Other circuits have reached a similar conclusion. In *United States v. Isabella*, 918 F.3d 816, 834 n.17 (10th Cir. 2019), the Tenth Circuit concluded that a defendant's "explicit requests for 'naughty' and 'naked' photos were more than sufficient to infer specific intent to persuade [a minor] to send him child pornography." Likewise, in *Lee*, the Eleventh Circuit held that a defendant intended to produce child pornography where he actively planned and directed the production of sexually explicit photographs of minors and supplied his address to receive them. 603 F.3d at 918.

From the trial evidence, a rational jury could have concluded that Hartleroad intended to produce a visual depiction as opposed to reacting to McCarty's prompting. The length and graphic detail of the script Hartleroad sent could provide a jury with a basis for rejecting his argument that he only intended to view a live visual depiction. Moreover, in response to the first time McCarty proposed that Hartleroad direct the sexually explicit conduct, Hartleroad expressed that he "love[d] the idea of telling you two what to do." He also continued to express a specific interest in directing the minor's conduct when there was a break in the conversation. And after the first Skype call, Hartleroad said he "would still love to do Skype with the two of you and direct," in response to McCarty's suggestion that they have another virtual meeting.

2. *Substantial Step*

As previously discussed, the government must also prove that the defendant took a substantial step toward completing the offense. A substantial step "is the demonstration of dangerousness, and has been usefully described as 'some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.'" *Gladish*, 536 F.3d at 648 (quoting *United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980)). In Hartleroad's view, his scriptwriting and his appearance at the Skype meeting do not qualify because McCarty suggested them. Hartleroad contends the writing of the script can also constitute fantasy, and the joining of a Skype meeting is different than traveling to meet a minor.

But there is sufficient evidence to show that Hartleroad took a substantial step. Despite scheduling conflicts and work hours, he repeatedly attempted to initiate the creation of child pornography that he directed by pursuing a date to hold the Skype meeting, which he joined. These steps are overt acts towards using a minor for the purpose of producing a visual depiction of sexually explicit conduct, which show his dangerousness.

In *Lee*, the Eleventh Circuit concluded that a reasonable jury could have found that the defendant took a substantial step toward using minors to produce child pornography by "repeatedly attempt[ing] to initiate the production" of sexually explicit photographs, sending a photograph of his own, and directing the creation and distribution of photographs to his home address. 603 F.3d at 918. Just as Lee requested sexually explicit photographs of minors and provided his address to receive them, *id.* at 909, 911, Hartleroad sent a script

of sexual conduct the minor should engage in, planned a Skype call, and joined that call during which the conduct was to take place.

A rational jury could also conclude that Hartleroad was not simply obliging McCarty when he planned and joined the Skype call. Instead of ignoring McCarty's messages after sending the script or seeking to limit the interaction to obscene speech, Hartleroad persisted in attempting to schedule a time for the Skype. He thanked McCarty for "bearing with" him as he determined whether his service would be good enough to Skype from his phone during work, insisting that the three "will m[ake] this happen." Hartleroad expressed his belief that it was "great" when a time was proposed by McCarty, saying that "this [will] be the night finally." And when that date was postponed for another, Hartleroad said that he could "make that work." Before the Skype call, McCarty asked Hartleroad if he was "sure [he] want[ed] to do this" given that the fictitious minor was "under age." Hartleroad responded, "It's cool. I'm ready." Hartleroad's statements and actions could be understood to mean that the offense would have been completed in the ordinary course of events.

## B. Constructive Amendment

Hartleroad's second attack on his conviction is that the instructions the jury received constructively amended the indictment. Those instructions included the producing and transmitting prongs of § 2251(a), yet the indictment charged only that he acted for the purpose of producing a visual depiction or a live visual depiction. But for this discrepancy, Hartleroad contends, he may not have been convicted. Even

if the evidence is sufficient to sustain the conviction, he submits it was within the jury's province to acquit him.

The government responds that the trial evidence conformed to the charge, so there was no constructive amendment. To the government, Hartleroad has not explained how the jury could have found him guilty of attempting to transmit but not produce child pornography, and no rational juror would have found accordingly.

Constructive amendment occurs where the evidence at trial proves an offense not charged in the indictment. *United States v. Heon Seok Lee*, 937 F.3d 797, 806 (7th Cir. 2019). The evidence included McCarty's proposal that Hartleroad "tell [McCarty and the minor] what to do," suggesting that Hartleroad direct the sexually explicit conduct. Hartleroad maintains that under that scenario, the jury could have found him guilty only of attempting to transmit but not to produce child pornography. *Cf. United States v. Withers*, 960 F.3d 922, 932 (7th Cir. 2020) (no evidence at trial exclusively supported a lower mens rea requirement that was not charged in the indictment); *United States v. Pigee*, 197 F.3d 879, 887 (7th Cir. 1999) (no evidence supported the charge excluded from the indictment).

Where a different crime has been proved but the error was not preserved, it is reviewed for plain error. *Heon Seok Lee*, 937 F.3d at 806, 806 n.4 (citing *United States v. Remsza*, 77 F.3d 1039, 1043–44 (7th Cir. 1996)). Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Under plain error review, three conditions must be satisfied before this court may consider exercising our discretion to correct an error: (1) "there must be an

error that has not been intentionally relinquished or abandoned"; (2) "the error must be plain—that is to say, clear or obvious"; and (3) "the error must have affected the defendant's substantial rights." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). If these conditions are satisfied, we exercise discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1905 (quoting *Molina-Martinez*, 578 U.S. at 194).

The government does not argue that Hartleroad intentionally relinquished his constructive-amendment arguments, nor do we conclude that he intentionally abandoned them. The government also does not contest that the discrepancy between the jury instructions and the indictment was plain error, and this discrepancy is indeed plainly erroneous. *See United States v. Murphy*, 406 F.3d 857, 860 (7th Cir. 2005) (concluding that plain error was shown where the jury instructions differed from the indictment by adding another offense); *Remsza*, 77 F.3d 1039 at 1043 ("[A]n amendment can result where the evidence presented at trial proves a violation of substantive law 'materially different' from that charged in the indictment." (quoting *United States v. Kuna*, 760 F.2d 813, 818 (7th Cir. 1985))). So, the first two requirements for plain error are satisfied.

Even if Hartleroad can satisfy the third prong of plain error review based on the constructive amendment, he cannot satisfy the fourth. In *United States v. Haas*, 37 F.4th 1256, 1267 (7th Cir. 2022), the defendant argued for the first time on appeal that the jury instructions and evidence presented by the government constructively amended the indictment, which charged him only with transmitting threats in *interstate*

commerce. The jury instructions and evidence, however, permitted the jury to convict him based on evidence of transmissions in *foreign* commerce. *Id.* We held that even if Haas satisfied the first three prongs of plain error review, the result did not impugn the integrity of the judicial process under the fourth prong. *Id.* Specifically, we were "satisfied that this jury could have found movement of these messages from or through one state to another." *Id.* We had "no doubt that if [the defendant] had raised this point in the district court, the government easily could have either supplemented its evidence of interstate commerce or obtained a superseding indictment charging foreign commerce." *Id.*

As explained above, sufficient evidence sustains Hartleroad's conviction under the production prong of § 2251(a). Like in *Haas*, we have no doubt that the government could have obtained a superseding indictment charging Hartleroad with acting for the purpose of transmitting a live visual depiction.

### C. Difference between Indictment and Statute

Hartleroad also asserts that "producing a live visual depiction" is not a criminal offense under § 2251(a). Under the plain error standard, he contends his substantial rights were affected by this phrasing in the indictment. The government submits that "visual depiction" as used in § 2251(a) includes live video.

We agree with the government, so Hartleroad's argument fails on the second prong of plain error review. If he satisfies the first prong, then acting "for the purpose of producing *any* visual depiction," § 2251(a) (emphasis added), is criminalized. "Any" visual depiction includes all subsets of visual

depictions, including live transmissions. Hartleroad contests that a Skype call constitutes a "visual depiction" as defined under 18 U.S.C. § 2256(5). That provision defines a "visual depiction" as including "undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format." *Id.* A live Skype call constitutes data capable of conversion into a visual image that has been transmitted via a computer. *See United States v. Nicoson*, 793 F.3d 761, 762–63 (7th Cir. 2015) (explaining that a web camera conveys images through a cable to a computer where they may be viewed). So, Hartleroad's assertion here is incorrect.

*        *        *

Sufficient evidence supports Hartleroad's conviction. His constructive amendment argument fails under plain error, as does his contention that the indictment charged conduct that is not an offense. For these reasons, the district court is

AFFIRMED.