In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2914

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH CARPENTER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:22-cr-20022 — **Michael M. Mihm**, *Judge.*

ARGUED MAY 21, 2025 — DECIDED DECEMBER 23, 2025

Before LEE, KOLAR, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* A jury convicted Joseph Carpenter of attempted sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e). At trial, the government introduced evidence that Carpenter exchanged online messages with an undercover federal agent posing as the father of an eight-year-old girl. Carpenter requested sexually explicit photographs and videos of the daughter. He also advised the "father" on what medication to give his daughter to make her

sleep and to facilitate the photography. Later, Carpenter attempted to access fake links purportedly containing the requested images. The court sentenced Carpenter to 180 months' imprisonment.

On appeal, Carpenter argues that the jury's verdict was not supported by sufficient evidence. He further claims that the trial court erred by instructing the jury that he could be convicted even if he never communicated with a minor but only with the undercover agent. Finding neither argument meritorious, we affirm.

## BACKGROUND

### I.  Factual Background

In November 2021, Carpenter started communicating online with undercover FBI agent John Gerrity. The conversation quickly veered into Carpenter's sexual interest in children. In their initial exchanges, Carpenter discussed his fantasy of having sexual relations with his stepdaughters. He also described receiving "catfished nudes" of them—pictures he had gotten by impersonating someone else. Carpenter also shared that he had recorded his stepdaughters (then minors) naked using hidden cameras and then masturbated to the videos. Carpenter and Gerrity then discussed Gerrity's fictitious daughter. When told that she was eight, Carpenter responded "nice." Carpenter then asked explicit questions about Gerrity's conduct with his daughter, including when he had last seen her naked and whether he had ever touched or penetrated her.

When Gerrity mentioned that he was going to have his daughter over for the weekend, Carpenter offered direct coaching to Gerrity. Carpenter asked if Gerrity had any "fun

for you plans" with his daughter, and Gerrity responded that he might take pictures while she was sleeping. Carpenter advised that "benadryl works amazing, [or] melatonin." Gerrity said he would try, and Carpenter responded that he would love to be there "to help you," and they could "take turns" using the daughter for oral sex. Gerrity later asked Carpenter which of four different sleep-aid products worked best. Carpenter recommended melatonin gummies because Gerrity could "say its candy." He told Gerrity to "give her a couple just to make sure she don't wake while you are doing things."

As the two continued talking about Gerrity's plans for the weekend, Carpenter requested that Gerrity send him sexually explicit pictures. Carpenter remarked that he "would love to be able to find one myself to groom the way I want." Gerrity responded that "us sharing her would be wild." Carpenter then asked Gerrity to "send[] me pics as you progress" for masturbation. Gerrity responded that he would try that weekend. Carpenter requested pictures of the daughter's genitals but also coached Gerrity not to photograph her full face to protect himself. Carpenter told Gerrity that he could not "wait to see what kinda fun you have with her" and that he wanted to "see some good pics." Then, on that Sunday, Carpenter asked if Gerrity had taken any pictures, including of her genitals. When Gerrity responded that he had pictures and videos, Carpenter said he could not wait to see them.

Over the next several weeks, Carpenter reiterated that he couldn't wait to see pictures and videos of the daughter, including "action shots" and pictures of her genitals. Eventually, Gerrity sent Carpenter four fake video files with names indicating child pornography content. Carpenter attempted to open the files, and while they did not open, the links

recorded Carpenter's attempts. Carpenter told Gerrity that the files did not open and repeated his desire for the pictures, at one point asking Gerrity "did ya forget about me?" when the agent had failed to respond. Carpenter requested pictures again just a few weeks later. Their communications ended in March 2022.

## II.  Procedural History

In April 2022, a grand jury indicted Carpenter with attempted enticement of a minor to engage in criminal sexual activity, 18 U.S.C. § 2422(b); attempted sexual exploitation of a child to produce a visual depiction, 18 U.S.C. § 2251(a), (e); and attempted receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(A), (b)(1).

In June 2024, the trial commenced. During opening statements, Carpenter's counsel conceded that he was guilty of the charge for attempted receipt of pornography but disputed the first two charges. The government presented just two witnesses: Agent Gerrity and another FBI agent who executed search warrants on Carpenter's home. After the government rested, Carpenter moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The court granted the motion as to the enticement charge under § 2422(b) but denied it as to the attempted exploitation charge under § 2251(a) and (e). Carpenter then rested his case without presenting any evidence.

The jury returned verdicts of guilty on the charges of attempted sexual exploitation of a child and attempted receipt of child pornography. At sentencing, the guidelines range was 188–235 months, and the court sentenced Carpenter to

180 months' imprisonment, the statutory minimum for the exploitation charge.

## DISCUSSION

Carpenter appeals his conviction under § 2251 for attempted sexual exploitation of a minor but not his conviction for attempted receipt of child pornography. Carpenter raises two issues on appeal. First, he argues that the evidence was not sufficient to convict him of exploitation of a child under § 2251. Second, he challenges one of the court's instructions to the jury. We address each issue in turn.

### I.  Sufficiency of the Evidence

We begin with Carpenter's argument that there was insufficient evidence to sustain his conviction for attempted sexual exploitation of a child under § 2251(a) and (e).

Before addressing the merits, we address the government's argument that Carpenter failed to preserve his sufficiency challenge. In order to preserve a sufficiency challenge, "a defendant must make or renew her motion for judgment of acquittal either at the close of evidence or through a timely post-trial motion as specified by [Rule 29]." *United States v. Wright*, 85 F.4th 851, 860 (7th Cir. 2023). As the government notes, Carpenter orally moved for judgment of acquittal after the government rested its case but did not renew the motion after he rested. Nor did Carpenter file a post-verdict Rule 29 motion raising a sufficiency of the evidence challenge. The government thus claims that Carpenter failed to preserve this argument, in which case we would review for plain error only. Under plain error review, we would reverse the conviction only if there was a "manifest miscarriage of justice," and the record is "devoid of evidence pointing to guilt." *Id.*

We hold that Carpenter's Rule 29 motion, made after the government rested, preserved this issue for appeal. When Carpenter rested his own case without presenting evidence, the close of the government's case became, as a practical matter, the "close of evidence." *See Wright*, 85 F.4th at 860. Carpenter was not required to engage in the repetitive exercise of renewing a motion based on the exact same evidence to preserve the issue. His motion at the close of the government's case was sufficient in the absence of further evidence. *See United States v. Daniels*, 723 F.3d 562, 569 (5th Cir. 2013) ("[Defendants] did not need to renew their Rule 29 motions in order to preserve their challenges because they did not present evidence."); *United States v. Wilson*, 240 F.3d 39, 43 (D.C. Cir. 2001) ("Because [the defendant] presented no defense at all, his motion at the end of the government's case fully preserved his claim.").

We therefore review Carpenter's challenge to the jury verdict de novo by asking "if there was sufficient evidence, when viewed in the light most favorable to the government, to allow a rational trier of fact to find all of the essential elements of an offense beyond a reasonable doubt." *United States v. Owens*, 301 F.3d 521, 527 (7th Cir. 2002) (citation omitted). We "neither reweigh the evidence nor reassess witness credibility" and "will overturn the verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Farmer*, 38 F.4th 591, 602 (7th Cir. 2022). We have described this standard as "nearly insurmountable." *Wright*, 85 F.4th at 860.

Section 2251(a) makes it a crime to a "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in,

or who has a minor assist any other person to engage in … any sexually explicit conduct for the purpose of producing any visual depiction of such conduct ….” Section 2251(e) makes it a crime to attempt to violate the statute. Because the six terms used in § 2251(a) are listed in the disjunctive, a conviction may be based on any one of them. *See United States v. Hartleroad*, 73 F.4th 493, 499 (7th Cir. 2023). The plain meaning of the verbs “employ” and “use” in particular “do[es] not require a defendant to communicate directly with a child.” *Id.* at 497 (citing *United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010)). In other words, a person can still be found to have used or employed a minor under the statute even if they only communicated with an intermediary. *Id.*

Because Carpenter was charged with an attempted violation of § 2251(a), the government must prove that he, first, “acted with the specific intent to commit the underlying crime,” and second, “took a substantial step towards completion of the offense.” *United States v. York*, 48 F.4th 494, 499 (7th Cir. 2022) (citations omitted). We have held that § 2251(a) contemplates the “specific intent to produce child pornography.” *Hartleroad*, 73 F.4th at 499. A substantial step is “the demonstration of dangerousness and has been usefully described as ‘some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.’” *Id*. (citation omitted).

Carpenter argues that his conversations with Gerrity do not establish that he had the requisite specific intent to produce child pornography nor that he took any overt act toward that end. According to Carpenter, Gerrity was the driving force in their conversations and first brought up taking pictures of his daughter. To the extent he discussed pictures,

Carpenter claims that he was merely responding to the undercover agent's prompting. Carpenter further argues that, while he brought up the use of drugs such as Benadryl and melatonin, he never specifically instructed Gerrity to use those substances to create child pornography. Carpenter thus maintains that, while he attempted to receive child pornography, he never attempted to employ, use, persuade, induce, entice, or coerce any minor to engage in sexual activity to produce a visual depiction. Finally, he argues that the evidence falls far short of that in *Hartleroad*, where we affirmed the defendant's conviction for attempted sexual exploitation based on his communications with an undercover agent. *See Hartleroad*, 73 F.4th at 496–500.

We disagree. We find that, when reading his conversations with Gerrity as a whole and construing the evidence in the light most favorable to the government, there was sufficient evidence to support the jury's verdict beyond a reasonable doubt. Nor, as explained below, do we find that this case is meaningfully distinct from *Hartleroad*.

First, the evidence demonstrated that Carpenter had the specific intent to use a minor to create child pornography. Specifically, he had the intent to use Gerrity's "daughter"—through the undercover agent as an intermediary—to engage in sexually explicit conduct that was to be photographed. Far from passively responding to Gerrity's prompting, it was Carpenter that first brought up sexually explicit images of minors when he described having "catfished nudes" of his daughters, and he added that he had recorded them naked using a hidden camera. Then, throughout their months-long conversations, Carpenter repeatedly pestered and begged—at least 5 times—for Gerrity to create and send pornographic images of

his daughter, even saying that he "couldn't wait" to see the pictures and pushing Gerrity when the links did not work.

Critically, Carpenter included specific instructions on what he wanted to see and how Gerrity should obtain it. *See Hartleroad*, 73 F.4th at 499 ("Requests to have a minor take and send pictures matching certain descriptions are sufficient to support specific intent to produce child pornography."). In *Hartleroad*, for example, the defendant arranged to have a Skype call with an undercover agent to watch him engage in sexual conduct with his minor child (who was fictitious). *Id.* at 495. Like Carpenter, Hartleroad claimed he was just responding to the agent's promptings, but we found that the defendant's communications with the agent demonstrated his specific intent to create child pornography. Hartleroad repeatedly expressed his desire to direct the undercover agent on what to do with the minor during the call and even prepared a detailed and graphic script for the encounter. *Id.* at 498–99 ("[T]he communications reflected in the record were enough to permit a trier of fact to conclude that his role was that of a producer, not a mere viewer.").

Here, while Carpenter may not have gone as far as preparing a detailed script, like Hartleroad he specifically directed Gerrity on what he wanted the visual depictions to include. That is enough, and a production-level written script is not at all required to prove an attempted exploitation charge. Carpenter requested that Gerrity take "action shots" and pictures while he "progress[ed]" in his sexual activities, and he repeatedly requested specific pictures of the daughter's genitals. He also warned Gerrity to avoid capturing his daughter's identifiable face to evade law enforcement. And in an act arguably even more direct than Hartleroad's script, Carpenter advised

Gerrity to drug his daughter so that she would not awaken during the abuse. Carpenter was not shy about the purpose of that advice: he stated that Gerrity should deceive his 8-year-old daughter into thinking that melatonin gummies were candy and he coached Gerrity on how much to give so that the daughter would not awaken while Gerrity was taking the photographs. As in *Hartleroad*, a reasonable jury could easily conclude from this evidence that Carpenter was not a mere viewer of child pornography, but rather specifically intended to direct its creation. *See id.*; *see also Lee*, 603 F.3d at 912–13 (finding that the defendant's intent to use minors to produce child pornography was demonstrated by the fact that he communicated with an intermediary to "actively plan[] the production of photographs that depicted … minor[s] … in graphic sexual poses," including by stating "how he wanted the girls to pose.").

Second, much of the same evidence also supports the jury's determination that Carpenter took several substantial steps and made overt acts towards using a minor to make pornography. *See Hartleroad*, 73 F.4th at 499–500. Again using *Hartleroad* as a point of comparison, there we rejected the defendant's argument, also advanced by Carpenter, that he was merely engaging in fantasy and obscene speech. Instead, we found that Hartleroad's script writing and repeated, persistent attempts to schedule and appear at the Skype meeting were sufficient evidence of his overt acts toward the completion of the crime of using a minor to produce child pornography. *Id.* ("Hartleroad's statements and actions could be understood to mean that the offense would have been completed in the ordinary course of events.").

Carpenter engaged in a comparable level of persistence here toward the end of directing the creation of child pornography. Carpenter not only repeatedly encouraged Gerrity to engage in sexual conduct with his daughter and asked for images of it; he also directed Gerrity on how to facilitate taking explicit images, including through drugging the daughter and advising Gerrity on what to include and what not to include in the images. And when the links he received did not work, he continued to press Gerrity asking him "did ya forget about me" and requested more pictures. In short, Carpenter's repeated requests and explicit instructions to Gerrity on how to drug his daughter and what to photograph do not evidence mere fantasy or obscene speech. Rather a jury could reasonably conclude that they are acts that, in the ordinary and likely course, would result in the crime: the creation of child pornography. *See id.* at 500 (discussing *Lee*, 603 F.3d at 918 (finding that the defendant took a substantial step toward the use of minors to create child pornography by "repeatedly attempt[ing] to initiate the production," directing the creation, and sending of photographs to his address)).

In sum, construing the evidence in a light most favorable to the government, it was sufficient to establish the elements of attempted sexual exploitation of a minor beyond a reasonable doubt. [1]

---

[1] Carpenter also raises a passing argument that, because the court dismissed the sexual enticement charge under § 2422(b) based on the same evidence, that undermines his conviction under § 2251(a). But the dismissal of the other charge is of no moment. The statutes criminalize different conduct and contain different language: § 2422(b) makes it a crime to "persuade[], induce[], entice[], or coerce[]" a minor to engage in illegal sexual

## II.  Jury Instructions

Carpenter also challenges the district court's instruction to the jury that, "[a] defendant may be found guilty of attempted sexual exploitation of a child even when the defendant communicates only with an intermediary—for example, an undercover law enforcement officer." Carpenter argues that the instruction was unlawful because it (1) constructively amended the indictment and (2) amounted to an inaccurate and incomplete statement of the law.

### A.  Constructive Amendment

The government argues that Carpenter forfeited his constructive amendment challenge to the jury instructions by failing to preserve it and that we should review the issue only for plain error. We need not decide that dispute here, however, because even under de novo review, his argument fails. *See, e.g.*, *United States v. Johnson*, 584 F.3d 731, 739 (7th Cir. 2009); *United States v. Chaoqun*, 107 F.4th 715, 727 (7th Cir. 2024).

Constructive amendment occurs when "the court (usually through its instructions to the jury) … broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Haas*, 37 F.4th 1256, 1266 (7th Cir. 2022).

---

activity; § 2251 on the other hand is targeted at the creation of visual depictions, and includes the additional verbs "employ" and "use." Furthermore, the proof required to establish an attempt crime under the two statutes is very different: where § 2251(a) requires the intent to create child pornography, § 2422(b) requires evidence that the defendant "manifests an intent to engage in sexual activity with a minor … and takes a step to influence the child to submit to that activity." *See United States v. Baird*, 70 F.4th 390, 393 (7th Cir. 2023). All that matters then is whether the evidence was sufficient to support the conviction under § 2251, which it was.

Constructive amendment can therefore violate the Fifth Amendment's guarantee that no one can be convicted of a crime for which they were not properly indicted by a grand jury. *Id.* ("No person shall be held to answer for a … crime, unless on a presentment or indictment of a Grand Jury.'" (quoting U.S. CONST. amend. V)). Constructive amendment means that the offense charged in the indictment is "materially different or substantially altered" from the offense proven at trial such that it is "impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Turner*, 836 F.3d 849, 863 (7th Cir. 2016).

The indictment here charged that Carpenter "attempted to use, persuade, induce, entice and coerce a minor to engage in sexually explicit conduct, for the purposes of producing any visual depiction of such conduct." Carpenter argues that when the court instructed the jury that he could be convicted even if he did not directly communicate with a child, it constructively amended the indictment broadening the basis of conviction. Put differently, Carpenter reads the indictment as charging him with "direct" exploitation of a minor, where the jury instruction included exploitation using another person as an intermediary.

Carpenter misapprehends § 2251 and our precedent interpreting it. Carpenter's indictment simply tracks the statutory language, which we have explained includes employing or using a minor through an intermediary. *See Hartleroad*, 73 F.4th at 497. The instruction that Carpenter could be convicted even if he never communicated with a minor thus flows directly from *Hartleroad*'s holding on the meaning of "use" and "employ" in the statute. *See id.* ("To us, the plain meaning of

the verbs "uses" and "employs" in § 2251(a) do not require a defendant to communicate directly with a child."). It was therefore unnecessary to indict Carpenter with "indirect" exploitation "through an intermediary," because a defendant is guilty of employing or using a minor to create child pornography whether it is done through direct communication or through an intermediary. *See id.*

Separately, we note that the key evidence of Carpenter's guilt was transcripts of Carpenter's messages to the intermediary—that is, to Gerrity—which were provided to the grand jury and produced early in discovery. We have noted that "one of the primary concerns underlying the prohibition on constructive amendments [is] the impairment of the defendant's ability to prepare his defense." *United States v. Blanchard*, 542 F.3d 1133, 1143 (7th Cir. 2008). That concern is not present here. Carpenter knew what he was charged with and that the government planned to prove it using his conversations with Gerrity. The jury instruction on the use of intermediaries thus created no impairment to Carpenter's ability to defend his case.

## B.  Accuracy of the Instruction

Finally, Carpenter argues that the instruction did not fairly and accurately summarize the law. The parties agree that Carpenter preserved this issue. We therefore review de novo the legal accuracy of the instruction, though we review "the trial court's [ultimate] decision to give a particular instruction … for an abuse of discretion." *United States v. Lawrence*, 788 F.3d 234, 245 (7th Cir. 2015). In reviewing an instruction, we reverse "only if it appears both that the jury was misled and that the instructions prejudiced the defendant." *United States v. Curry*, 538 F.3d 718, 731 (7th Cir. 2008).

This challenge fails under *Hartleroad*. We held there that a conviction under § 2251(a) is valid even if a defendant does not communicate directly with a minor and instead only communicates with an intermediary such as an undercover agent. *Hartleroad*, 73 F.4th at 497. The instruction was thus plainly correct.

Carpenter resists this conclusion by seizing on dicta in *Hartleroad* where we acknowledged that "our court has not yet determined what types of communication with an adult can support a conviction under § 2251(a)." *Hartleroad*, 73 F.4th at 497. In *Hartleroad*, though we found that the defendant's communications supported his conviction, we did not endeavor to outline a formalistic test for what types of communications are generally sufficient to convict a defendant of child exploitation via an intermediary. *See id.* at 497–98. Carpenter suggests this means that the law on the use of intermediaries is unsettled, so it was unfair to instruct the jury on the issue.

This argument is a non-starter. Each case involves unique record evidence and whether that evidence meets the statutory elements is a jury question. That we declined in *Hartleroad* to engage in a formalistic line-drawing exercise is of no import here. Carpenter fails to explain how the lack of a definitive line renders the instruction inaccurate or misleading to the jury. The judge accurately instructed the jury that the government could satisfy the elements of § 2251(a) even if Carpenter only communicated with an intermediary to a minor. The jury listened to the testimony, evaluated the record evidence, and found the statutory elements satisfied beyond a reasonable doubt. There was nothing misleading or prejudicial about giving the jury an accurate statement of the law.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.